IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

_____

MARCELLINO PEÑA,                    Cause No. CV 05-138-BLG-RWA

      Petitioner,

   vs.                              FINDINGS AND RECOMMENDATION
                                    OF U.S. MAGISTRATE JUDGE
WILLIAM SLAUGHTER, Director,
Montana Department of Corrections;
JAMES MacDONALD, Warden, Crossroads
Correctional Center, Shelby, Montana,

      Respondents.

_____

On October 20, 2005, Petitioner Marcellino Peña filed this
action for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254.
Peña is a state prisoner proceeding with counsel.

On February 10, 2006, Peña filed a memorandum in support of
the petition.

**I. Background**

On October 31, 1998, Peña, who was seventeen years old at the
time, broke into a home in Billings, Montana, demanding money and
drugs.  He was accompanied by two other boys of approximately the
same age.  Peña searched the home while one of his friends forced
the woman who lived in the home to perform oral sex.  When a

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

vehicle pulled into the driveway and someone entered the house, Peña fled through a window.  So did the youth who raped the woman, but he fired a shot from outside the house and killed the driver of the vehicle.  *See Peña v. State*, 100 P.3d 154, 156-57 ¶¶ 4-6 (Mont. 2004).

Peña was charged in Montana's Thirteenth Judicial District Court, Yellowstone County, with deliberate homicide under the felony murder rule, Mont. Code Ann. § 45-5-102 (1997); robbery, a violation of Mont. Code Ann. § 45-5-401(1)(b); and aggravated burglary, a violation of Mont. Code Ann. § 45-6-204.  Pursuant to an agreement with the State, he pled guilty to felony murder and aggravated burglary.  On April 2, 1999, he was sentenced to a term of forty-five years.  He did not appeal.  *Id*. at 157 ¶¶ 8-9.

On October 25, 1999, Peña, acting *pro se*, filed a petition for postconviction relief, challenging the trial court's failure to hold a hearing before permitting the State to proceed against him as an adult.  The State conceded the petition's merit, and a transfer hearing was held.  On September 13, 2000, Peña re-entered his guilty pleas and was re-sentenced to a term of forty-five years.  Again, he did not appeal.  *Peña*, 100 P.3d at 157 ¶¶ 10-11.

More than two years later, on October 16, 2002, Peña filed another petition for postconviction relief.  On March 5, 2003, counsel appointed to represent Peña filed an amended petition, alleging that the trial court lacked jurisdiction to sentence him

to more than five years in the custody of the Department of
Corrections.   Peña argued that the Montana Youth Court Act,
specifically Mont. Code Ann. § 41-5-206(6) (1997),[1] requires that
youths convicted of crimes as adults be sentenced to the custody of
the Department of Corrections, and that Mont. Code Ann. § 46-18-
201(1)(e) (1997) limits commitments to the custody of the
Department of Corrections to five years.  *Id*. at 157 ¶ 12.

The trial court denied the petition.  On October 21, 2004, the
Montana Supreme Court affirmed, holding that Peña's second
postconviction petition was untimely because it was filed more than
one year after his conviction became final.  *Id*. at 161 ¶ 29.  The
court also found that Peña's petition was procedurally barred
because he could have raised the sentencing argument on direct
appeal.  *Id*. at 163 ¶¶ 36-37 (citing Mont. Code Ann. § 46-21-105).

Peña filed his petition in this Court on October 20, 2005.

## III. Peña's Allegations

Peña contends that the trial court lacked subject-matter

---

[1]  In Montana, "[t]he general rule is that sentencing statutes
in effect at the time of the offense control."  *State v. Hirt*, 124
P.3d 147, 149 ¶ 14 (Mont. 2005).  Certain amendments to Mont. Code
Ann. § 46-18-201 became effective on April 28 or October 1, 1999,
and applied to persons sentenced after those dates.  However, even
if the 1999 statute applied at Peña's re-sentencing in September
2000, it would not help him.  The amended statute distinguishes
between adult offenders and juveniles tried as adults.  *Compare id*.
§ 201(3)(d)(i) *with id*. § 201(3)(d)(ii).  Thus, the result reached
in the analysis below would be the same under either the 1997 or
the 1999 statute.

jurisdiction to sentence him to more than five years' custody in the Department of Corrections.  Pet. (doc. 1) at 4, ¶ 12A.

In his Memorandum, Peña also asserts that trial counsel provided ineffective assistance because he failed to pursue a direct appeal of the sentence.

## IV. Analysis

Peña's petition is barred by the doctrine of procedural default and by the federal statute of limitations.  It also lacks merit.

### A. Procedural Default

The issue of procedural default may be raised on preliminary screening "when the default is obvious from the face of the petition and when recognizing the default would 'further the interests of comity, federalism, and judicial efficiency.'"  *Vang v. State of Nevada*, 329 F.3d 1069, 1073 (9th Cir. 2003) (quoting *Boyd v. Thompson*, 147 F.3d 1124, 1128 (9th Cir. 1998)).

Here, procedural default is clear on the face of the petition. Peña states that he did not appeal from the judgment of conviction. *See* Pet. at 1, ¶ 8.  The only issue he raises is plainly one that should have been raised on direct appeal.  *Id*. at 4, ¶ 12A.  Mont. Code Ann. § 46-21-105(2) (1997) provides, in pertinent part, that "When a petitioner has been afforded the opportunity for a direct appeal of the petitioner's conviction, grounds for relief that were

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 4

or could reasonably have been raised on direct appeal may not be raised, considered, or decided in a proceeding brought under this chapter."[2]  The Montana Supreme Court expressly held, in part, that

---

[2]    The Court is aware that Peña's case may accurately be described as a landmark in Montana postconviction law.  In *Peña*, the court resolved a split that had developed in its precedents between cases granting postconviction relief on the grounds that a trial court lacked subject-matter jurisdiction to impose an illegal sentence and cases holding that the state postconviction statute of limitations is itself jurisdictional.  *Compare, e.g., State v. Moorman*, 928 P.2d 145, 149 (Mont. 1997) (holding that sentencing court "lacked jurisdiction" to impose dangerous offender designation at sentencing), *and Thompson v. Twenty-First Jud. Dist. Court*, No. 03-525, slip op. at para. 5 (Mont. Sept. 23, 2003) (unpublished opinion) (rejecting State's postconviction statute-of-limitations argument because petitioner challenged the district court's subject-matter jurisdiction to sentence him to 40 years' imprisonment), *with Maier v. State*, 69 P.3d 1194, 1198 ¶ 20 (Mont. 2003), *and State v. Abe*, 37 P.3d 77, 80 ¶ 15 (Mont. 2001) (both holding that postconviction statute of limitations is jurisdictional).  *Thompson* was vacated and a new decision, consistent with the court's reasoning in *Peña*, was issued on November 18, 2003.

The novelty of Peña's case would be important if this Court identified the one-year state statute of limitations as the procedural bar.  A state procedural bar is "adequate" if it was "firmly established and regularly followed ... at the time the claim should have been raised."  *Fields v. Calderon*, 125 F.3d 757, 760 (9th Cir. 1997) (internal quotation and citation omitted); *see also Ford v. Georgia*, 498 U.S. 411, 424 (1991).  One could argue that the application of the one-year state statute of limitations was not firmly established until the Montana Supreme Court reached a decision in Peña's case.

However, it is the direct appeal rule of Mont. Code Ann. § 46-21-105(2), not the state statute of limitations in Mont. Code Ann. § 46-21-102, that prompts the Court to inquire as to procedural default.  Section 105, so far as the Court is aware, has been consistently applied since at least 1997, when the statute was amended to take its current form.  *See, e.g. State v. Herman*, 127 P.3d 422, 431-32 ¶ 55 (Mont. 2006); *Hans v. State*, 942 P.2d 674, 692-93 (Mont. 1997) (distinguishing *Finney v. State*, 931 P.2d 1300 (Mont. 1997), following *Tecca v. McCormick*, 806 P.2d 11 (Mont. 1990), and disallowing "out-of-time appeal").

Peña's second postconviction petition was procedurally barred because his argument could and should have been raised on direct appeal.  *Peña*, 100 P.3d at 163 ¶ 37.

Peña attempts to excuse his procedural default by contending that his trial counsel was ineffective in failing to pursue a direct appeal.  That, however, is a new claim, made for the first time in Peña's memorandum, which was filed four months after his federal habeas petition.  *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000), requires that a petitioner's proffered cause for procedural default must itself be properly exhausted and not procedurally defaulted in the state courts.  Peña's Sixth Amendment claim was never presented in the state courts, despite his filing of two postconviction petitions and a postconviction appeal.  His second postconviction petition was filed by new counsel, not the same attorney who should have filed a direct appeal.  Consequently, unlike the petitioner in *Moorman v. Schriro*, 426 F.3d 1044, 1058-60 (9th Cir. 2005), he was not prevented from raising the Sixth Amendment claim earlier.  He has offered no cause for his failure to raise the Sixth Amendment claim in postconviction proceedings in the state courts.[3]  Consequently, Peña has failed to show cause to

---

[3]  Peña could not claim that his postconviction counsel was constitutionally ineffective because there is no Sixth Amendment right to the assistance of counsel in postconviction proceedings. *See Moormann*, 426 F.3d at 1058 ("Attorney ignorance or inadvertence is not cause, but attorney error rising to the level of an independent constitutional violation (in the form of ineffective

excuse his procedural default; it is not necessary to inquire as to whether he can show prejudice.

Peña also asserts that failing to reach his claim of sentencing error would amount to a fundamental miscarriage of justice.   This assertion is addressed below, in Part IV.C, "Merits."

**B. Federal Statute of Limitations**

A one-year statute of limitations applies to petitions filed under 28 U.S.C. § 2254.  *See* 28 U.S.C. § 2244(d)(1).  In this case, the limitations period began to run on the date Peña's conviction became "final" in state court.  *Id*. § 2244(d)(1)(A).  Under state law, Peña had sixty days to file a notice of appeal from the trial court's imposition of sentence on April 2, 1999.[4]  *See* Mont. R. App. P. 5(b).  Since he did not do so, his conviction became "final," for purposes of 28 U.S.C. § 2244(d)(1)(A), sixty days after the entry of judgment, or on June 1, 1999.  Peña filed a petition for postconviction relief on October 25, 1999, tolling the federal statute of limitations under 28 U.S.C. § 2244(d)(2) after

---

assistance of counsel) does constitute cause.... [However,] because there is no Sixth Amendment right to counsel in state post-conviction proceedings, there can be no independent constitutional violation as a result of post-conviction counsel's incompetence.").

[4]  The Court will assume, for present purposes, that judgment was entered on this date.  Peña may correct the analysis by submitting appropriate evidence.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 7

145 days had run.  He was resentenced on September 13, 2000, and had another sixty days to file a notice of appeal.  Even assuming that the federal statute of limitations began anew after the new judgment was entered, it would have started on November 14, 2000, and expired on November 14, 2001.  Peña did not file his habeas petition in this Court until nearly four years later, on October 20, 2005.  He did not raise the Sixth Amendment claim until nearly four months after that, on February 10, 2006.

Peña points out that he filed his federal petition within one year of the Montana Supreme Court's decision on October 21, 2004, rejecting his appeal from the trial court's denial of his second postconviction petition.  But the federal statute expired on November 14, 2001, eleven months before Peña filed his second postconviction petition in state court on October 16, 2002.  Moreover, that petition was not "properly filed" within the meaning of 28 U.S.C. § 2244(d)(2) because it was untimely.  *See Pace v. DiGuglielmo*, 125 S. Ct. 1807, 1814 (2005).

Peña also seems to assert a "fundamental miscarriage of justice" exception to the federal statute of limitations.  *See* Resp. (doc. 12) at 3 (citing *Carriger v. Stewart*, 132 F.3d 463, 477 (9th Cir. 1997) (en banc)).  *Carriger* is not a statute of limitations case and is not an AEDPA case.  *See id*. at 473 n.3.  The Court is not aware of any "miscarriage" exception to the federal statute of limitations.  Moreover, as set forth below, Peña

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 8

could not qualify for such an exception even if it existed.

The Court can only conclude that Peña's petition is barred by the federal statute of limitations, which expired on November 14, 2001.

**C. Merits**

Federal habeas relief could be available "only on the ground that [Peña] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The Montana Supreme Court found that the trial court did not lack subject-matter jurisdiction to impose sentence on Peña.  *Peña*, 100 P.3d at 160 ¶ 23 (citing Mont. Const. art. VII, § 4; Mont. Code Ann. §§ 45-5-102, 45-6-204, 41-5-206).  That is squarely a matter of the interpretation of state law.  No federal court, not even the United States Supreme Court, may question the Montana Supreme Court's interpretation of Montana law.  *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today we reemphasize that it is not the province of a federal habeas court to reexamine state court determinations on state law questions."); *Wisconsin v. Mitchell*, 508 U.S. 476, 483 (1993) ("There is no doubt that we are bound by a state court's construction of a state statute.")

Peña's claim in his Memorandum that "the Montana Supreme Court played fast and loose with the unequivocal language of the statute and essentially perverted the legislative intent," Mem. (doc. 8) at 10, is simply wrong.  The provisions of Title 46 were triggered

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 9

when Peña's case was transferred from youth court to the district court under Mont. Code Ann. § 41-5-206(1)(a)(ii) and (b)(iv) and (v) (1997).   There would be little point in the Legislature's enactment of such transfer provisions if youths convicted of felony murder and aggravated burglary could still only be sentenced to five years.[5]   Further, the Youth Court Act defines the word "commit" to mean "transfer to legal custody."   Mont. Code Ann. § 41-5-103(4) (1997).  A youth who is found guilty after a transfer to district court must be "committed" to the Department of Corrections, may not be placed in a state prison if he is under 16, and, if he has disabilities, must be provided an education consistent with the federal Disabilities Education Act.  *Id*. § 206(6).   Thus, a youth's commitment to the Department of Corrections under § 41-5-206(6) (1997) is different from an adult offender's commitment to the Department of Corrections under § 46-18-201(1)(e) (1997).

Peña could obtain federal habeas relief on the grounds that his sentence violated state law only if he was deprived of a "substantial and legitimate expectation that he will be deprived of

---

[5]  The availability of stiffer penalties is the reason for the transfer provision.  *See, e.g.*, *State v. Butler*, 977 P.2d 1000, 1006 ¶ 26 (Mont. 1999) (stating that the difference between youth court and district court "is as potentially important to a youth as the difference between being detained until he is 25 years of age if the case is processed in youth court, and losing his life if the case is processed in district court.").

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 10

his liberty only to the extent" provided by state law, *see Hicks v. Oklahoma*, 447 U.S. 343, 346, (1980), or, to put it another way, only if Peña was an "isolated defendant" who was deprived of "the benefit of a state law that applies to everyone else," *Fetterly v. Paskett*, 15 F.3d 1472, 1475 (9th Cir. 1994) (Kozinski, J., dissenting from denial of reh'g en banc) (restating the rule of *Hicks*).

Peña cannot make that showing.[6]  In *White v. MacDonald*, No. 04-023 (Mont. Mar. 2, 2004), the Montana Supreme Court decided that Mont. Code Ann. § 46-18-201(1)(e) (1997) applies to adult offenders only.  The court reached the same conclusion in *Vandersloot v. Mahoney*, No. 03-692 (Mont. Mar. 24, 2004).  These decisions are unpublished and so have no precedential value, but they are compelling evidence showing that Peña had no "substantial and legitimate expectation" of receiving a sentence limited to five years.  While White, Vandersloot, and Peña were tried as adults,

---

[6] Generally, judicial interpretation of *Hicks* has focused on the procedures by which state courts render decisions – a sensible course of interpretation, given the *Hicks* Court's reliance on procedural due process.  *See, e.g.*, *Murtishaw v. Woodford*, 255 F.3d 926, 969-71 (9th Cir. 2001) (holding, where state's highest court had already found that trial court sentenced defendant under wrong statute, that imposition of death sentence under statute containing mandatory language violated federal due process); *Walker v. Duncan*, 50 F.3d 670, 672-73 (9th Cir. 1995); *Campbell v. Blodgett*, 997 F.2d 512, 522 (9th Cir. 1992).  However, the Court will give Peña the benefit of the doubt and assume, for the sake of argument, that a *Hicks*-like argument can be built on substantive state sentencing laws.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 11

they were in fact juveniles at the time they committed their crimes of conviction, and all three were sentenced pursuant to Mont. Code Ann. § 41-5-206(6) (1997), which does not limit commitments to the Department of Corrections to a specific term of years. *See Peña*, 100 P.3d at 157 ¶¶ 8-9; Order at paras. 2 & 7, *White*, No. 04-023; Order at para. 4, *Vandersloot*, No. 03-692.

The logic of *White* and *Vandersloot* disposes of the issue here. The Montana Supreme Court has granted habeas relief to other petitioners who seek to limit their prison terms based on Mont. Code Ann. § 46-18-201(1)(e) (1997), but none of those cases involved juveniles.[7] *See, e.g., Marquez v. Mahoney*, No. 05-270 (Mont. June 21, 2005); *Hanley v. Dep't of Corrections*, No. 04-843 (Mont. Mar. 8, 2005); *Peterson v. Mahoney*, No. 03-739 (Mont. Dec. 16, 2003); *Hester v. Mahoney*, No. 03-367 (Mont. July 15, 2003); *Curry v. Mahoney*, No. 03-258 (Mont. June 19, 2003); *Hunt v. Mahoney*, No. 03-137 (Mont. Apr. 7, 2003); *Knerr v. Mahoney*, No. 03-077 (Mont. Mar. 4, 2003); *Belgarde v. Montana*, No. 02-546 (Mont. Nov. 7, 2002).[8]   The Court is not aware of any decision of the

---

[7]   Peña's Memorandum says "[i]t is an unequivocal statement of fact" that the "Montana Youth Court Act of 1997 § 46-18-201(1)(e) (1997)" limits DOC commitments to five years.  Mem. at 9.  The statement may be unequivocal, but it is wrong.  The Montana Youth Court Act is in Title 41, not Title 46.

[8]   The Court has cross-checked each of these cases with each petitioner's age and date of the offense on the CON Network, http://app.mt.gov/conweb.  None of the petitioners was under eighteen at the time the offense was committed.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 12

Montana Supreme Court, published or unpublished, that reaches a conclusion different from the same court's decisions in *White* and *Vandersloot* where the defendant was a juvenile – that is, less than eighteen years of age[9] – at the time the crime was committed. The reasoning of *White* and *Vandersloot* certainly does not violate federal law; there is nothing unusual about a court's holding that a specific sentencing provision controls over a general provision.

Even after this Court gave Peña an extension of time to supply authority counsel said he was in the process of locating, his only response has been to switch arguments. Peña now apparently asserts error in a stipulation to his transfer to adult status. *See* Pet'r Supp. Resp. (doc. 14) at 4 ("The State had the burden of proof and these and other factors had to be resolved against Peña in order to properly waive jurisdiction and transfer the case. The court utilized an incorrect procedure, *vis-a-vis* the stipulation."). This is another new claim that was not presented in the courts of the State of Montana. At any rate, "[o]n September 13, 2000, the District Court issued findings of fact, conclusions of law, and an order granting leave for the State to file the Information against Peña directly in District Court." *Peña*, 100 P.3d at 157 ¶ 11. The stipulation arose after the transfer hearing and issuance of the

---

[9] *See* Mont. Code Ann. § 41-5-203(1) (1997) (giving youth court jurisdiction over persons who are 21 or younger when charged and who commit an offense "prior to having become 18 years of age").

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 13

trial court's findings and conclusions, when Peña "re-entered his guilty pleas and the same sentence was imposed." *Id*.

Peña also seems to assert that counsel was ineffective in failing to appeal the transfer – yet another new claim that has not been presented in the Montana courts.  Counsel says:

> [H]ad Peña been able to present the argument that both his tender age, extremely minimal role in the underlying offense and his total lack of criminal or violent history to the Appeals Court; [sic] there is the reasonable probability and likelihood that that Court would have seriously considered these prominent factors in balancing whether it wanted to treat a juvenile within the juvenile Court system before entering upon a proceeding that resulted in an adjudication that had a substantial deprivation of liberty in contravention of the Eighth Amendment to the United States Constitution and a **fundamental miscarriage of justice.**

Pet'r Supp. Resp. (doc. 14) at 3 (emphasis in original).

The "Appeals Court" – that is, the Montana Supreme Court – would not have decided whether *it wanted* to treat Peña as a juvenile.  It could only have considered whether the trial court abused its discretion in transferring Peña to adult status. Moreover, it certainly would not have considered whether the transfer was appropriate in light of the sentence that eventually was imposed.

Finally, Peña's Supplemental Response adds a new Eighth Amendment contention that is not in the petition and was not raised in the Montana courts.  The argument is mere assertion, unaccompanied by any proportionality analysis under the pertinent

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 14

authorities.  Peña's arguments come too late and have no merit.

Because Peña was not treated differently than other juvenile offenders and because he had no "substantial and legitimate expectation" that any sentence would be limited to five years' commitment, he cannot show the violation of a federal right.  For the same reason, he cannot show that this Court would effect a "fundamental miscarriage of justice" if the doctrine of procedural default or the federal statute of limitations were enforced against him.  The Court could reach a different conclusion only by striking out on a new path in the interpretation of state law, contrary to the direction taken by the Montana Supreme Court.  This Court has no authority to do that.

## VI. Certificate of Appealability

### A. Governing Standards

Pursuant to 28 U.S.C. § 2253(c), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), "[a] certificate of appealability ["COA"] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  *See Hohn v. United States*, 524 U.S. 236 (1998); *Lambright v. Stewart*, 220 F.3d 1022, 1024 (9th Cir. 2000). The standard of a "substantial showing" can be satisfied on an issue-by-issue basis.  *Lambright*, 220 F.3d at 1024 (citing 28 U.S.C. § 2253(c)(3)).

[I]n order to make a substantial showing of the denial of

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 15

> a federal right a petitioner . . . "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'"

*Lozada v. Deeds*, 498 U.S. 430, 432 (1991) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).   *See also Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.").   Thus, a petitioner may obtain a COA even if he does not establish that he will prevail on the merits.  The COA inquiry seeks only to prevent frivolous appeals from wasting judicial resources, while still affording defendants an opportunity to show potential for merit. *Lambright*, 220 F.3d at 1025.  Any doubt as to whether a petitioner has met the standard is resolved in his favor.  *Id*.

Where, as here, a petition is dismissed on procedural grounds, the court must decide whether "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Lambright*, 220 F.3d at 1026 (quoting *Slack*, 529 U.S. at 484).

Finally, the COA must indicate which issues satisfy the required showing, 28 U.S.C. § 2253(c)(3), and the Court must "state why a certificate should *not* issue." Fed. R. App. P. 22(b)(1)

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 16

(emphasis added).  The Court need not explain why a certificate *should* issue.  *Id.*

**B. Discussion**

Peña has had more than ample opportunities to say why his petition is not barred by the doctrine of procedural default.  Peña failed to pursue a direct appeal of his sentence.  The only potential causes he has identified to excuse that default are ineffective assistance claims that were not properly exhausted (or even mentioned in passing) in the state courts.  Nor could there be cause for Peña's failure to raise the ineffective assistance claims in his postconviction proceedings.  He filed two postconviction petitions without raising his new claims – so new they post-date even his federal petition – in either one.  He was not represented in his postconviction proceedings by the same counsel who allegedly should have pursued a direct appeal of the sentencing issue, and he has no constitutional right to the effective assistance of counsel in postconviction proceedings.  The Court is not aware of any facts that might lead reasonable jurists to reach a different conclusion.

Peña's petition is also barred by the federal statute of limitations, which expired at least eleven months before Peña filed his second postconviction petition in the trial court.  Peña has not offered any "extraordinary circumstances" that prevented him from filing a timely federal petition.  Nor has he identified any error in the Court's calculation of the statute of limitations.  He

says only that the federal petition was filed within one year of the Montana Supreme Court's decision, which ignores the plain meaning of 28 U.S.C. § 2244(d)(1) and (2) as well as the Supreme Court's recent decision in *Pace v. DiGuglielmo*, 125 S. Ct. 1807, 1814 (2005).

As to the merits, Peña's claim for relief depends entirely on his allegation that his forty-five-year sentence for felony murder and aggravated burglary somehow violates state law.  Because the Montana Supreme Court has determined in other cases that it does not, Peña cannot demonstrate a violation of any federal right.

Because Peña has not made a showing with any substance to it that he was deprived of a constitutional right, and because the Court's procedural rulings are based on well-established law, he is not entitled to a COA.

### RECOMMENDATION

Based on the foregoing, the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), **RECOMMENDS** that Peña's Petition (doc. 1) be DENIED on the merits.  A certificate of appealability should be DENIED.

The Clerk of Court shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon counsel of record.  Counsel is advised that, pursuant to 28 U.S.C. § 636, any objections to these findings must be filed or delivered to prison authorities for mailing within twenty (20) calendar days

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 18

after the entry date reflected on the Notice of Electronic Filing,

or objection is waived.

DATED this ____12th____ day of May, 2006.


/s/ Richard W. Anderson
Richard W. Anderson
United States Magistrate Judge

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 19